The first one will be American National Property v. Burns, 18-8006. Counsel, you can begin when ready. May it please the Court, my name is Bernard Phelan, and I'm pleased to represent the parents of Tyler Burns, Jamie, and Robin Burns in this declaratory judgment matter. Philip Sam, age 16, killed Tyler Burns using a semi-automatic pistol taken from his mother's home days after he ran away and was then residing with his father at a separate residence. Philip Sam, his mother, and her resident boyfriend have been sued by Tyler's parents for wrongful death based upon Philip's intentional acts and the negligent storage of the firearm by the mother and her boyfriend. Her insurer, American National Property and Casualty Insurance Company, has denied coverage based upon an exclusion for criminal acts of a resident relative of Dora's household. The Burns are an interested party in this declaratory judgment action. The lower court erred when it found, as a matter of law, that Philip Sam was a resident relative because a person, quote, may have two residences without acknowledging the ambiguity of the term resident relative contained in the policy where there is clear evidence that Dora's son was not a resident of Dora's household at the time of the alleged incident. The question is, was Philip Sam a resident relative in the household of the insured at the time of the occurrence? In the light of the ambiguity of the term resident relative and viewing the evidence in a light favorable to the non-moving party in this summary judgment proceeding, it is clear that Philip Sam was not a resident relative co-insured of Dora Sam's household and the exclusion for attentional acts of an insured should not and does not apply. Do you have a case where a court has held that a minor child who may be living with another custodial parent but still has visitation at another parent's house is not a resident? Well, we have additional facts in this case, which is joint custody of the divorce decree. A divorce decree says that the son could reside with the father when the father was in town. I mean, doesn't that suggest that it was contemplated that the son would have dual residency, so when the father was out of town, the son would reside with the mother, and when the father was in town, the son would reside with the mother or the father? He does have alternate residences based upon the circumstances at the time, but the question in this case is coverage by the insurance policy, which says resident relative of the insured, of the named insured, is deemed to be an insured, therefore the exclusions apply. The question is in this case, was he a resident relative at the time of the occurrence, not was he or could he have been a resident relative at some other time. This has to do with insurance coverage at the time of the occurrence. I mean, he still had a room at her house. That's undisputed, isn't it? He used a room at her house. He didn't want to, but he did because he's a kid. He had to have a room at his mom's house. So you say he used a room. Was there a room in the house that everybody understood was his room? He had a room, and the pictures of that room are in the record. He had another room at his father's residence, which he says he wanted to live at, and he said to the police when he was arrested, I don't want to be at my mother's home because of the boyfriend. And when he was arrested, he told the police what his residence was, and the booking sheet shows that he said, I live at 1976 County Road 219, which is the residence, the household of his father. So let me ask you this. Have you seen a case that takes the opposite, where someone is trying to say my son is a resident of my home under this policy, so I want him to be covered, and the insurance company says, no, your kid lives with his dad, so he's not covered? I haven't found a particularly case like that. I haven't. There may be one. I just don't know about it. Right. The question in this case with regard to the issue of resident relative is the ambiguity of the term. To what extent does what he wishes factor into this equation? You said that at the time, of course, he was arrested. He had to list what his address was, and he expressed his wish to live with his father because of the boyfriend, but that sort of begs the question as to who cares what he wants and what his wishes were at the time. Well, it does have relevance in that the question of residence is the person's intent. Where does he intend to have a residence? Well, to that point, I mean, just to clarify, and I do want to get into your ambiguity conversation, but just to clarify, why isn't it equally true? Well, why isn't it true that the question of residence turns on the facts on the ground? In other words, for a minor in particular, if his parents say, you live in this house, and they provide a place for him to live, if he goes out in the street and tells everybody, you know, I don't want to live at that house, I don't live at that house, how does that change the fact that the facts on the ground establish that the place where he will lay his head down is at his parents' house, his mother's house? In this case, we have a divorce decree which says that there is joint custody, primary residence with the mother, and when the father is in town, children with the father, his residence. And that was the situation at the time of this occurrence, is that he was residing with his father, not his mother. Okay, so you aren't really moving away from, I mean, the district court did find that you could have two residences, right? And you're not really disputing the concept that you can have two residences, and in fact, that's what the divorce decree said. What you're disputing is that at the time of the event, the residence that he had was the residence of the mother. The residence at the time of the shooting, the residence that he had and was at was the residence of his father. Yes, yes, so you're disputing that it was the residence of the mother. So you're not disputing that you can have two residences. You're just saying that at the time of the event, he was residing at his father's home. He was a resident of his father's home, yes, not his mother's. And when we're talking about application of exclusions in an insurance policy, those particular circumstances could be spelled out by the policy as to what constitutes a relative, but it wasn't spelled out. Residence, you mean. A residence, yes. Talk about what law you rely, well, talk about the law that you rely on to establish the ambiguity of the term resident. There's many cases. One case in Wyoming, TM, executive indemnity, cited in the brief on pages 9, 10, 9, 13, 14, and 15, found that several courts have found coverage in the face of similar exclusions holding the words that resident or regularly resides with are ambiguous and must be construed in favor of the insured. In favor of coverage. In favor of coverage. But let me ask you, isn't that a sort of two-step process? In other words, even if we adopt the view that resident is ambiguous and therefore should be construed in favor of coverage, we still have to decide whether there's a reasonable theory under which he was, in this instance, not a resident of his mother's house, right? Yes, and the facts is what bends in the favor of that proposition, that he was not a resident relative. And the facts that just give me the salient facts are the ones that you think are most important in that regard. Not limiting you, but just which ones do you think are sort of the hallmarks of that? All right. First, the statement by the young man himself. I live at 1976-219, County Road 219. I don't want to live with my mother. I don't want to be there. It's not my intent. I left. I ran away. She says he ran away. He was with his father at the time of the occurrence. How does the runaway fact cut? I mean, because in theory, one could say that you run away from something, and runaway could mean you're running away from your home, your residence. So how does the runaway fact cut? Also having to do with the intent of the person who is deemed by the insurance company to be an insured, resident insured. He was not a resident insured because he did not have the intent to be at the place. He had run away. He left to go to the other place that he was entitled to be under the divorce decree. And he asked for permission, or he called his mother and said, I'm going into the house after I'm with my father. I'm letting you know I'm going in, asking permission to go into a house. That is an inference that he was not a resident of that house. The physical condition of his two rooms that he used, the one that he had at his father's showed a neat, carefully maintained room with his turtle and his posters. The other one's a complete mess. He's forced to be there. So when we're talking about insurance coverage. A complete mess could be that that is his residence, his primary residence, but he messes it up, right? She has primary physical. Yes. He messes it up. He leaves. Yeah. And says, I don't want to be there. He tells the police, I am not resident with my mother. I'm resident with my father. And we're talking about insurance coverage. I know. That's sort of what concerns me. What I'm struggling with here a little bit is we have a we're going to look at this in a manner that's, you know, in a light most favorable to coverage. I mean, that's probably an overstatement of the doctrine. Don't take that as a pronouncement of the law. But, you know, just the way I view it, you look at it in a light most favorable to coverage. And so then so you say, okay, so who is covered? And you look over at the insured paragraph and you broadly construe it to the mother, certainly. And if you're broadly construing it, it would put the son in the category of someone who's going to be insured under this policy. Then you flip over to the exclusions, which exclude any act or any personal injury arising out of any criminal act committed by or at the direction of an insured. So you have to construe it to provide coverage as broadly as possible. So you put the son in the category, and then you come over here and it kicks him out because he got put in on the first prong. Well, that's what the insurance company is doing, is keep kicking him off. And in doing that, also trying to kick off the principal insured, the named insured, because of the any insured language of the exclusion. In the light of a severability clause, which is also in the insurance policy, which provides insurance for each insured, cases have held, the Minkler case and Wyoming Federal District Court case said that the Barnett and Harper cases find that the exclusions would be applied to those people who are claiming insurance. In other words, if the negligent insured was not the person that committed the intentional act, that person is covered under the severability clause. My time is up. Thank you. Thank you, Counsel. May it please the Court, Counsel, my name is Kurt Buckhammer, represent American National Property and Casualty Company in this matter. The issue that is before us is, was young Phillip Sam a resident of his mother's house? That's what it boils down to. I don't think there's any dispute that the exclusion, the any insured exclusion would apply to prevent coverage for these criminal actions. And I don't think there's any real dispute as to the severability clause. It's almost a non-issue. The issue is, was Phillip Sam a resident of his mother's house? The facts in this case clearly, clearly establish that he was. Mr. Phelan, as he did in the trial court, wants to rely upon evidence that really is not properly in the record. Well, Mr. Phelan said, at least as I understood his argument here, and I think in the brief, it's not a question of whether he was a resident of his mother's house generally. It was a question of whether at the time of the event he was a resident of his mother's house, right? Well, and I don't think that is the issue. Because the policy doesn't say you have to be a resident at a specific point in time. What is important is what the law says about residency. And that's what the district court realized is that under Wyoming law, you can clearly be a resident at the same time in two different places. And that's what we're dealing with here. Well, at the same time, meaning in the same moment in time? Because, I mean, if you, at least if the understanding is, yes, he's a resident, theoretically, when his dad's out of town, he's a resident at his mother's house. When his dad's in town, he's a resident at his dad's house. Why can't the existence of those two mean that we need to focus on exactly the moment when the crime occurred, the incident that would deny him coverage? In other words, why isn't residence linked and connected to that moment in time? I don't think it is linked to that moment in time. The reason for that is because you can hold two residencies at the same time, you can't split that hair and say, at 3.05 p.m. on October 5th, I was a resident of dad's house, even though I still maintained a residence at my mom's house. You can't split the two. Well, maybe there is some factual scenario where it will be difficult. But here, because of the divorce decree, you can pretty easily define when he would have been at one house or another, right? Well, am I disputing that he was with his father at the time of the accident or time of the shooting? Well, he wasn't even with his dad at the time of the shooting. But he was at his dad's house. He was at his dad's house momentarily because his dad had just returned to town and he had actually been staying with his adopted grandmother. But he was where the divorce decree at that time said he would be, which was with his dad, right? Correct. There is no doubt about that. That does not mean that he still was not a resident of his mother's house. And I think that's the key. You can't pick and choose where you're going to be a resident. You either are or you are not, which I think gets back to the difference. And there is a distinction in Wyoming law between domicile and residency. And the key to that is what was your intent at the time? And for purposes of residency, intent is completely irrelevant. You look at the facts. What was going on at that point in time? And here the facts are pretty clear. He did have rooms at both mom's house and dad's house. He had a divorce decree in place that gave mom primary residential custody. And I think this is the key factor. Both mom and dad testified, and the record is very clear on this, that he was a resident of both houses. What do you rely upon for the proposition that intent is irrelevant on the residency front? And note, I'm not saying it's determinative, but why wouldn't intent be a factor in considering what would be a resident? For two reasons. And give me the case that you rely on in that regard. I think intent... It is discussed in the Ritter case. It's discussed in the Duckstad case. It's discussed in the McDougall case. That intent is not relevant for a residency. I don't know if they say it's not relevant, but intent is not really the consideration. The real issue here is that we are dealing with a minor. And the district court very correctly noted that a minor isn't capable of forming the intent for residency or domicile and relied upon the U.S. Supreme Court decision in Mississippi Band of Choctaw Indians v. Holyfield. Let's talk for a moment about the question of ambiguity. Why isn't the TM case, which I revisited as recently as last night, why doesn't that suggest that that term is ambiguous? And if it is ambiguous, why can't we construe it in favor of coverage? Well, and actually, to construe it in favor of coverage would be to construe it in favor of coverage for all of the insureds, which is just what we're saying. He was an insured. Let's interpret it broadly. Mr. Philip Sham and his mother and everybody else that lived in the house that was a relative, his siblings, were insureds. I understand that theory, but the other theory would be coverage really means the bottom line, whether you get to actually get coverage, which would mean that we would have to construe it in a way that would cause him to avoid the exclusion, right? I'm sorry. If we're construing it in favor of coverage, I think I understand your point that that would mean it's more likely he would be lumped into the category of resident relative. But what I'm saying is that term, construed in favor of coverage, at least as I generally understood it, means construed in favor of the bottom line, which is whether you get coverage. And the bottom line would mean construing it in a way that would exclude him from the exclusion. I think I understand what you've asked, Judge Holmes. I don't know if I have an answer that is going to truly answer what you've asked. Well, there are two steps to it. One, do you accept the premise that TM calls residents ambiguous? And if you do, I may have already received your answer, but if the answer to that is yes, then what is the implication of that for this case? I'm trying to recall the issue in TM, and I don't recall exactly if that was the property case where they were trying to decide whether or not a shed was considered a residence. If that's the case, it certainly... No, no, no. This was the psychologist. Oh, this is the case? Yeah, and her husband abusing the children. This is the case in which the kids were placed in the home pursuant to a court order. Correct. Given those facts, when you're ordered to be there by a court... No, but they were focusing on the residency of the husband, the abuser. In other words, I think it was analogous to this situation, at least my recent memory of it is, in the sense that what we were focusing on is, are you excluding coverage because the husband lived in the home? I think that's what was going on. Your Honor, you may absolutely be correct. My recollection... No, no. It says whether children regularly resided with Dr. Griswold is a question of fact, including application of household. So no, it was the children. You're right. I thought it was the issue of the residency of the children as opposed to the foster parent that was there. It's just such a unique and distinct set of facts, separate from this, that would create that ambiguity. Were the kids there because it was truly their residence, or were they there because they were ordered by court to be placed with that family? Well, there is a similarity to this case, though, in that we had a court order saying that when Dad's in town, the kid's living with Dad. Absolutely. And as I was even speaking with Judge Holmes about that, I thought, you know, that is going to be the next question. And the difference being here is, again, if you look, you don't want to just pick out one fact and rely on that. You have to look at the whole picture. And the whole picture here includes what did, apart from what did the divorce decree say, what did Mom and Dad,  Philip Sam's dad, have to say about this? They both testified in uncertain terms that Philip resided with both of them. That was their intent. And therein lies the distinction in that court order. What about the severability clause in this thing? Doesn't it suggest, at least, couldn't a layperson reading this agreement read that and say, oh, you know, if my kid was to commit a crime, it wouldn't exclude me from coverage, because this says we're both treated separately. Well, and I think if we take a look at what the majority of cases say about severability clauses, it is very clear that what the severability clause is doing is saying, regardless of who you are as the insured, the terms and conditions of this policy are going to apply. And if the term is that you have coverage, great. But if the terms and one of the conditions is that there is an unambiguous exclusion in place, that same term and condition is going to apply to you. It's an assurance given by the insurance company that all insureds are going to be given the benefit of the terms and conditions of the policy. And I'm pretty confident that that is what the case law addressing the issue of severability clauses has said, and that is clearly the majority position on that issue. There are a couple of cases, I think one out of California, that holds differently, but the authorities in cases that have addressed severability clauses just absolutely are consistent with the position that I have set forth in the briefing in this matter. Counsel, just to make sure I understand correctly, let us assume that the father had an identical policy at his house. Your position is that both policies would be liable under this circumstance. My position would be if he had an identical policy. Well, your position is that if he had an identical policy, neither of them would be covered. He would be an insured under both parents' homes. But the unambiguous exclusion for criminal conduct of any insured would apply to prohibit coverage for this crime. Now, I don't know if Mr. Sam, Nathaniel Sam, had a policy. The claim hasn't been made against him, so we don't know that. But if he did have the same policy, I think the same position would have to be taken, because he was a resident of both parents' homes. So that both policies would be liable under this circumstance? If there was no exclusion that applied. The exclusion in each of the policies would result in no coverage for either house. Correct. If they were the same policies in place at both residences. Which gets to, and perhaps it's a public policy issue, and that is why the exclusions are in the policies. Is it violative of public policy to insure against your own crimes? I think it is. And that's why those exclusions are in there. I see I am just about out of time. I would like to end with a hypothetical. Let us presume that Dora Sam is out of town. Dad brings Philip over to the house to get his clothes. And while Philip is there, he goes in the garage and brings a bicycle out and leaves it laying on the sidewalk and they leave. And that Tyler Burns, who comes to visit Philip, trips over the bicycle, falls, hits his head and dies. Would there be coverage? A negligence claim, Philip Sam is an insured, absolutely there would be coverage for that negligence. That's not what we're dealing with here, we're dealing with an insured who committed a crime that was specifically excluded from coverage. Thank you, counsel. A whopping seven seconds. No allegation that Nathan Sam was negligent. That's why she's seeking coverage.